UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 24-41577 |
| Twin Cities Health Services, Inc., | Chapter 11 Case (Subchapter V) |
| Debtor.[1] | |

**DECLARATION OF GULED MOHAMOUD IN SUPPORT OF CHAPTER 11 (SUBCHAPTER V) PETITION AND FIRST DAY MOTIONS**

I, Guled Mohamoud, declare as follows:

1. I am the Chief Financial Officer of Twin Cities Health Services, Inc. (the "Debtor").

2. I am familiar with the Debtor's businesses, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Debtor's officers or retained advisors in the ordinary course of my responsibilities.

3. I am authorized by the Debtor to submit this "First Day Declaration."

4. I submit this First Day Declaration on behalf of the Debtor and in support of: (a) its voluntary petition for relief that was filed on June 17, 2024 (the "Petition Date") under Subchapter V of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and (b) its "first day" motions, which are being filed concurrently herewith (collectively, the "First Day Motions").

5. The Debtor seeks the relief set forth in the First Day Motions to minimize the adverse effects of the commencement of the Chapter 11 (Subchapter V) case on its business.

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtor's address is 3255 Hennepin Avenue South, Minneapolis, Minnesota 55408 and its Employer Identification Number (EIN) is 82-3009877.

6.      I reviewed the Debtor's petition and the First Day Motions, or have otherwise had their contents explained to me, and it is my belief that the relief sought is essential to ensure the uninterrupted operation of the Debtor's business and to successfully maximize the value of the Debtor's business and estate by obtaining access to cash collateral necessary to continue operations.

**I.     THE COMPANY.**

7.      The Debtor is a Minnesota corporation with its principal place of business located at 3255 Hennepin Avenue South, Minneapolis, Minnesota 55408. The Debtor was formed on March 10, 2017.

8.      The Debtor specializes in helping individuals struggling with mental illness or substance abuse piece their lives back together. The Debtor's professionals work with patients to help them achieve independence and stability. With flexible appointments and telehealth availability, the Debtor ensures patients get the help they need as soon as possible. More information about the Debtor can be found on the Debtor's website at https://www.twinchs.com/.

9.      The Debtor currently employs or contracts with 55 medical health professionals and three substance use disorder counselors.

**II.    HISTORY OF THE DEBTOR.**

10.     After its formation on March 10, 2017, the Debtor began working with underserved communities struggling with behavioral health challenges in their daily lives.

11.     With rapid growth during the events of 2020, including the COVID-19 pandemic, and the need for additional support, the Debtor grew from eight to ten staff members to over 20 staff members.

12. During the Debtor's peak in 2023, the Debtor employed 60 people who provided direct care to patients or played supportive roles.

13. The Debtor has worked to organize various community engagement events and to coordinate partnerships with other providers.

14. From January 2019 to May 2024, the Debtor has served over 1,200 patients.

### III.  BUSINESS OPERATIONS.

15. The Debtor mainly operates out of an office building located at 3255 Hennepin Avenue South, Minneapolis, Minnesota 55408. The Debtor does not own the building, but rents from Dennis Investments. That lease is set to expire on December 31, 2024.

16. The Debtor also maintains a single-family house located at 2215 29th Avenue North, Minneapolis, Minnesota 55411 to provide housing to its homeless patients. The Debtor does not own the single-family house, but rents from Algo Realty. That lease is set to expire on September 30, 2024.

17. The Debtor offers various services to its patients including: (a) one-on-one mental health counseling; (b) group psychotherapy sessions; (c) adult mental health rehabilitation services; (d) behavioral health crisis planning and interventions; (e) substance use treatments; and (f) peer recovery support.

18. The Debtor's principal form of income is payments, or accounts receivable, from its patients. The Debtor anticipates such accounts receivable to be its primary form of cash collateral.

### III.  PREPETITION CREDITORS.

17. The Debtor, with the assistance of counsel, conducted a UCC search on June 11, 2024 in Minnesota, where the Debtor is incorporated and conducts its business.

3

18. Based on that search, certain of the following entities may have a perfected security interest in the Debtor's prepetition assets, including, but not limited to accounts receivable and cash collateral.

19. Several of the following entities are factoring companies, which purchased the Debtor's accounts receivable in exchange for a cash advance.

    A.    **FundThrough USA, Inc.**

20. On October 15, 2019, FundThrough USA, Inc. ("FundThrough") and the Debtor entered into an Accounts Receivable Purchase and Security Agreement through which the Debtor sold certain accounts receivable to FundThrough under a factoring arrangement.

21. Pursuant to that agreement, on October 10, 2019, FundThrough filed a UCC-1 Financing Statement (File No. 1109666700028) against the Debtor identifying "ALL ASSETS, ACCOUNTS, INVENTORY, INTANGIBLES, OTHER" as its collateral.

22. On or about November 29, 2023, FundThrough entered into an Intercreditor Agreement with US Med Capital, LLC ("US Med"), another factoring company (the "Intercreditor Agreement").

23. Pursuant to the terms of the Intercreditor Agreement, FundThrough agreed to subordinate its security interest in accounts created after November 1, 2023, and all proceeds from such accounts.

24. The Intercreditor Agreement also grants US Med the exclusive right to collect all accounts and exercise dominion and control over collection of accounts in accordance with the Purchase Agreement (defined below).

25. The Debtor does not believe that any accounts receivable currently exist for services provided before November 1, 2023. Consequently, the Debtor believes FundThrough holds a second priority interest in any accounts receivable and cash collateral.

26. The Intercreditor Agreement only applied to accounts and proceeds from such accounts. Consequently, FundThrough presumably holds a first priority security interest in all other assets of the Debtor.

27. As of the Petition Date, FundThrough asserts that the Debtor owes approximately $232,000 to FundThrough.

**B.  US Med Capital, LLC.**

28. On November 12, 2023, the Debtor and US Med entered into a Healthcare Insurance Receivables Purchase and Security Agreement (the "Purchase Agreement").

29. Pursuant to the Purchase Agreement, the Debtor sold certain accounts receivable to US Med under a factoring arrangement.

30. On November 13, 2023, First Corporate Solutions, as representative to US Med, filed a UCC-1 Financing Statement (File No. 1427266200033)[2] against the Debtor identifying US Med's interest in the following collateral:

> All of Debtor's existing and later acquired assets, including but not limited to Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Inventory, Investment Property, Instruments, Letter of Credit

---

[2] On or about December 11, 2023, an entity named "Corefund Capital, LLC" filed a UCC-3 Amendment Statement assigning the US Med financing statement to a new secured party of record. On or about February 22, 2024, a UCC-3 Amendment Statement was filed (File No. 145712080000050), which deleted "Corefund Capital, LLC" as a secured party. Based on the subsequent filing of the UCC-3 amendment, the Debtor does not believe Corefund Capital, LLC asserts a security interest in any of the Debtor's assets. Moreover, upon information and belief, US Med did not authorize the filing of the UCC-3 Amendment Statement. Under Minn. Stat. § 336.9-509(d), an amendment to an initial UCC-1 financing statement may only be filed if such amendment is authorized by the secured party of record. Consequently, the "Corefund Capital, LLC" filing constitutes an ineffective filing.

5

Rights and all Supporting Obligations including all of Debtor's books and records evidencing and/or related to any of the foregoing, any Commercial Tort Claim that Debtor may come to have and that is subsequently specifically referenced by written amendment, as well as all of Debtor's software programs, stored data, aging schedules, customer lists, books, records, returned merchandise and all property of Debtor at any time coming into US Med Capital LLC's possession; and all lien rights associated with the Accounts, whether arising by operation of law or pursuant to contract or agreement, including but not limited to mechanic's lien rights; and all Proceeds, Products and Supporting Obligations of each of the foregoing. Debtor has agreed not to further encumber collateral or enter into additional financing agreements without further written approval of the secured party. The secured party reserves all rights against anyone who violates its rights.

31. As of the Petition Date, the Debtor does not owe US Med any amounts under the terms of the Purchase Agreement.

    **C.**    **U.S. Small Business Administration.**

32. On November 20, 2023, Corporation Service Company filed a UCC-1 Financing Statement (File No. 1429021500307) on behalf of the U.S. Small Business Administration (the "SBA")[3] against the Debtor claiming an interest in the following collateral, including "accounts":

All of each Debtor's present and future personal property, accounts, chattel paper, deposit accounts, goods, assets and fixtures, letter of credit rights, documents, securities entitlements, securities accounts, commodity accounts, commodity contracts, investment property, payment intangibles, general intangibles, instruments, equipment, inventory, commercial tort claims, all supporting obligations of the foregoing, all cash and cash equivalents, and all proceeds and products of the foregoing, and all additions and accessions thereto, substitutions therefor and replacements thereof, in each case whether now owned or hereafter arising or acquired by any Debtor and wherever located. Unless otherwise consented to in advance in writing by Secured Party, each Debtor is prohibited from (i) entering into any merchant cash advance or any loan agreement with any party other than Secured Party or the U.S. Small Business Administration (the "SBA") or any equipment lender secured solely by new equipment purchased with the proceeds of its loan, (ii) incurring any other indebtedness for borrowed money with any party other than Secured Party or the SBA or any equipment lender secured solely by new equipment purchased with the proceeds of its loan, (iii) selling or granting any security interest in any current or future receivable(s) of such Debtor,

---

[3] The financing statement itself does not identify the SBA as the lien holder. However, based on the references within the financing statement, including the collateral description, it appears the financing statement was filed on behalf of the SBA.

or (iv) entering into any other type of financing agreement or arrangement whereby such Debtor is required to make periodic payments, deliveries, or remittances to a third party other than financing agreements or arrangements with the SBA or any equipment lender secured solely by new equipment purchased with the proceeds of its loan or equipment leases of new equipment.

33. As of the Petition Date, the Debtor estimates the SBA is owed $75,487.

**D.  CHTD Company.**

34. On February 16, 2024, CHTD Company ("CHTD") filed a UCC-1 Financing Statement (File No. 1455939500458) against the Debtor identifying "[a]ll present and future assets of the Debtor" as its collateral.

35. As of the Petition Date, it is unknown what amounts, if any, may be owed to CHTD.

**E.  Knightsbridge Funding LLC.**

36. On March 15, 2024, Knightsbridge Funding LLC ("Knightsbridge") filed a UCC-1 financing statement (File No. 1463702901945) against the Debtor claiming an interest in the following collateral:

> ALL ASSETS NOW OWNED OR HEREAFTER ACQUIRED AND WHERE LOCATED, INCLUDING BUT NOT LIMITED TO THE FOLLOWING OF ASSETS:  ACCOUNTS INCLUDING BUT NOT LIMITED TO CRDIT CARD RECIEVABLES.  CHATTEL  PAPER.  INVENTORY.  EQUIPMENT. INSTRUMENTS INCLUDING BUT NOT LIMITED TO PROMISARY NOTES.  INVESTMENT  PROPERTIES.  DOCUMENT.  DEPOSITS ACCOUNTS.  LETTER  OF  CREDITS.  GENERAL  INTANGIBLES. SUPPORTING OBLIGATIONS. PROCEEDS AND PRODUCTS OF THE FOREGOING.

37. As of the Petition Date, the Debtor estimates that it owes Knightsbridge $150,000.

**F.  Minnesota Department of Revenue.**

38. In addition to the above-described UCC filings, on November 22, 2023, the Minnesota Department of Revenue ("MDR") filed a Notice of State Tax Lien (File No. 1429973001552) against the Debtor, asserting .

39.  As of the Petition Date, MDR asserts that the Debtor owes approximately $587,480 to MDR, of which approximately $39,217.26 is secured.

**G.  Other Secured Creditors.**

40.  U.S. Bank, N.A. ("US Bank") asserts a security interest in one of the Debtor's vehicles.

41.  The Debtor does not believe other secured creditors have an interest in the Debtor's cash collateral.

**IV.  THE DEBTOR'S OPERATIONAL AND FINANCIAL CHALLENGES.**

19.  While changing from one factoring company to another, the Debtor experienced a gap in funding.

20.  To cover the gap in funding, the Debtor entered into other agreements with higher payments and interest rates to allow the Debtor time to increase revenue.

21.  The Debtor was ultimately unable to balance the debt.

22.  To attempt to balance the debt, the Debtor tried scaling back some of its services, reducing costs, renegotiating with creditors, applying for consolidated loans, and speaking with potential investors to inject capital into the company. These efforts ended up being unsuccessful.

23.  The Debtor filed a previous voluntary petition for relief under Chapter 11 (Subchapter V) of the Bankruptcy Code on April 26, 2024. *See* Voluntary Pet., *In re Twin Cities Health Servs., Inc.*, No. 24-41124 (Bankr. D. Minn. Apr. 26, 2024), ECF No. 1. The Debtor ultimately consented to the voluntary dismissal of that case. *Id.* at ECF No. 29. Since that case was dismissed on May 24, 2024, *id.* at ECF No. 37, the Debtor has used the additional time to continue negotiating with interested parties.

24. The Debtor now seeks to file a plan of reorganization to restructure its secured debts in order to pay creditors and continue operating.

25. I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request that all the relief requested in the First Day Motions be granted, together with such other and further relief as is just and equitable.

Dated: June 17, 2024

_____
Guled Mohamoud, Chief Financial Officer