UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In Re: | Subchapter V |
| | CHAPTER 11 |
| TWIN CITIES HEALTH SERVICES, INC. | |
| Debtor. | Case No.   24-41577 |

---

UNITED STATES TRUSTEE'S OMNIBUS OBJECTIONS TO MOTIONS FOR
1) AUTHORIZATION TO USE CASH COLLATERAL AND CONTINUE THE SALE OF ACCOUNTS RECEIVABLE OF US MED CAPITAL, and
2) AUTHORIZATION TO PAY WAGES and
3) AUTHORIZATION TO CONTINUE THE USE OF BANK ACCOUNTS

---

The Acting United States Trustee, through her undersigned attorney, submits this omnibus response and objection to the first day, expedited motions filed in the above-entitled case.

The motions now before the court seek, *inter alia,* an order 1) approving the continued sale of accounts receivable and the use of cash collateral (ECF #6); 2) for the authority to pay outstanding wages and compensation (ECF #4); and 3) for the continued use of bank accounts (ECF #5).   In furtherance of her objections, the Acting U.S. Trustee states the following:

1. The voluntary petition commencing this chapter 11 case was filed on June 17, 2024. Previously, on April 26, 2024, the debtor filed its prior chapter 11 case.   See *In re Twin Cities Health Services, Inc.,* Case #24-41124. (the Prior Case).   The debtor has not yet filed its schedules or statements in the case, only having filed a voluntary petition.

General Objections to all Motions

2. In the debtor's Prior Case, this court entered an order dismissing the case on May 24, 2024. Case #24-41124, ECF #37. There was 24 days between the dismissal of the prior case and debtor's commencement of this case. The prior dismissal order granted the expedited motion by the Acting U.S. Trustee seeking dismissal based on debtor's inability to reorganize. See Case #24-41124, ECF #23. Importantly, the debtor did not oppose dismissal, submitting a response in support of dismissal on May 16, 2024, which was verified by debtor's president Guled Mohamound. Case #24-41124, ECF #29. That response conceded that the debtor did not need relief under chapter 11.

3. In the Prior Case, on May 2, 2024, the debtor previously sought authority to continue its factoring arrangement with US Med Capital, LLC. (US Med) See Case #24-41124, ECF #9 and #12. The debtor characterized that motion as one for the sale of accounts receivable. *Id.* The motion sought to grant US Med Capital a first secured priming lien under 11 U.S.C. §364(d). *Id.* The U.S. Trustee objected (see case #24-41124, ECF #17) to the factoring arrangement based on *inter alia* the proposed grant of overreaching liens, the failure to meet the requirements of §364(d), the retroactive perfection of such liens, excessive and unclear factoring costs, etc. On May 6, 2024, the court denied the debtor's prior factoring motion with US Med Capital. Case #24-41124, ECF #22.

4. At the hearing on the continued sale of accounts receivable in the prior case, held on May 6, 2024, attorney Casey Z. Donoyan appeared on behalf of FundThrough USA, Inc., and advised the court that there was an intercreditor agreement between FundThrough and US Med Capital, and that FundThrough would have its lien primed if the relief then sought were granted. Conversely, in this case, debtor's CFO, Guled Mahamoud filed a June 17, 2024, sworn statement

indicating that although the debtor owes FundThrough $232,000, FundThrough does not hold a first lien on any assets. See ECF #8, p.5, ¶¶25-27. On information and belief, there is likely to be continuing disputes related to lien priority over the debtor's assets in this most recent case, including the amount and perfection of such liens. The absence of any current bankruptcy schedules in this case precludes parties from fully analyzing the basis for the motion, including analyzing any changes in the debtor's financial situation since the prior case was dismissed. In the face of such uncertainty, the court cannot grant a post-petition lien, (priming or otherwise) to any party.

5. Also, in the Prior Case, the debtor's prior motion seeking approval of the US Med factoring indicated that US Med had, at that time, taken debtor's receivables, but apparently had not paid the debtor for them. Specifically, in case #24-41124, at ECF #9, p.4, ¶6, the motion verified by Galud Mahamoud on 5/2/2024, stated: "As of the date of filing, US Med held unpaid purchase price advances of $530,955.63"[1]. Now, in debtor's current verified motion, the debtor states "the debtor does not owe US Med any unpaid advances under the terms of the Prepetition Purchase Agreement, but the debtor owes certain monetary obligations to US Med under the prepetition purchase Agreement . . .". ECF #6, p.10, ¶27. This raises substantial questions about the reconciliation of debtor's accounts with US Med. Specifically, did the debtor receive its advances (payment) on the $530,955.63 collected by US Med, and if so, what has happened to the funds US Med should have paid on those advances. How were such substantial funds used in the 24 days between the dismissal of its prior case and the present? Before any factoring or

---

[1] It appears that all debtor's receivables may be going to a lock-box controlled by U.S. Med Capital.

sale is approved, there needs to be a comprehensive reconciliation and accounting of the debtor's relationship with US Med.

6. Also, in the prior case, the debtor was revealed to be a health care business and as such, is subject to the appointment of a patient care ombudsman, under 11 U.S.C. §333. The Acting U.S. Trustee addressed the costs of such an ombudsman in her motion to dismiss the prior case, including the debtor's apparent inability to afford such an ombudsman. In the past year, the debtor has had significant problems with the Minnesota Department of Human Services (MDHS) regarding the debtor's certification to provide services to its patients. See Debtor's response to U.S. Trustee's motion to dismiss, case #24-41124, ECF #29, and Exhibit #1. As a result, the appointment of an ombudsman in this case is essential, yet the debtor does not appear to have the funds (at least a $20,000 retainer), to cover such costs. Such costs are also not addressed in the motion to use cash collateral.

7. Similarly, the debtor needs to cover the cost of a Subchapter V trustee, since the debtor again elected such treatment on its petition in this case. See U.S. Trustee's motion to dismiss in #24-41124, ECF #23. In the prior case, there was pending at the time the case dismissed, a motion by the Subchapter V trustee for a security deposit. *Id.* at ECF #6. The debtor does not seem to acknowledge the need to cover these ongoing expenses going forward in this case.

8. Additionally, the three pending motions of the debtor consist of over two hundred pages; the cash collateral/factoring motion being 175 pages, the wage motion (ECF #4) being 22 pages and the bank account motion (ECF #5) being 14 pages. The motions were served late in the afternoon on Monday, June 17, 2024, with a hearing set for 11:30 on Thursday, June 20, 2024. There is the intervening federal holiday of Juneteenth on June 19th. As a result, parties

simply have not had sufficient notice to review and respond to any of the relief now sought. Accordingly, the relief sought in each of the debtor's pending motions should be denied.

9. The U.S. Trustee submits that none of the relief sough in the debtor's current motions should be granted. Now, twenty-four days after dismissal of its prior case, the debtor comes in with new counsel and seeks the exact same relief it was unable to obtain previously. None of the schedules or statements have been filed in this case and it is unclear what if anything has changed in three weeks.

10. Also, there are numerous contradictions between debtor's prior case and the relief sought in this case. The Acting U.S. Trustee requests an evidentiary hearing where the debtor's officer Guled Mahamoud appears and testifies regarding the absence of bankruptcy schedules and the inconsistencies between the current motions and his verifications of fact in the debtor's prior case. As described above, these factual inconsistencies and unknowns must be addressed before the court grants any of the relief now sought.

Factoring and Use of Cash Collateral

11. Regarding the specifics of the debtor's combined motion seeking to both the use cash collateral and to obtain approval of the US Med factoring agreement, the motion proposes to grant authority to use cash collateral, granting replacement liens "to the extent of cash collateral used". ECF #6, p.3-4, ¶9. Although the motion lists at least six different creditors which may assert a security interest in debtor's assets (*Id.* at ¶8), the motion does not really identify which secured creditors collateral will be used going forward, if another creditor does in fact have a lien on receivables. Moreover, the providing of replacement liens is at best, confusing and unclear. It appears the expected effect if the court grants debtor's motion would be that US Med would take a first secured lien in all assets (at minimum, all the receivables

assets), priming all other creditors such as FundThrough, who also appear to have liens on assets. Any grant of replacement liens must be of the same priority, dignity and effect as existed pre-petition, and any such grant by the court must be after further clarification of the lien priority and amounts for each secured creditor.

12. Also regarding the continued use of cash collateral, it appears the debtor does not have sufficient cash to continue operations without obtaining approval of factoring going forward. Specifically, the cash collateral motion and future projections reveals that the debtor appears to have cash of $32,478.12. See Exhibit E to ECF #6 - Starting Cash, 17 June 2024. According to the pending wage motion, the debtor claims to need no less than $103,324.23 to meet payroll. See ECF #4, p.3, ¶13. That need appears to be substantially overstated.

13. The budget attached to the motion (Exhibit E to ECF #6) also shows that during the first week (June 17, 2024), the debtor will obtain $130,000 from new factoring, but will end the week with $61,533.89 in cash on hand. According to the projections, each subsequent week the ending cash balance increases. As a result, the debtor clearly does not need to use all the cash collateral it seeks approval for on an interim basis. Instead, notwithstanding that this is an interim motion, it appears the debtor is seeking to factor/sell all its existing receivables, which is wholly inappropriate at this stage of the case. The debtor should not now be authorized to sell or factor everything. Since this is an interim motion, debtor should only be allowed to sell what's needed to avoid immediate and irreparable harm, as required by Fed.R.Bankr.P. 4001(b)(2).

14. Finally, cash collateral use should be addressed separately from the factoring motion and the wage motion, and the debtor must meet each of the requirements of each motion to obtain the overall relief it now seeks. For example, although missing a payroll would arguably result in immediate and irreparable harm to debtor's business, that does not absolve the debtor

from meeting the requirements of §364 in obtaining authority to incur post-petition debt. It also does not relieve the debtor from proving the need to use cash collateral through the avoidance of immediate and irreparable harm and the granting of appropriate replacement liens. Here, however, the court need not get to the issue of cash collateral use or bank account use, until such time as it shows it can meet the borrowing requirements of §364(c) or (d).

## Payment of Payroll Obligations

15. Also pending is debtor's motion seeking authority to make payroll, including the continuance of employee benefits. ECF #4. The motion states that the unpaid payroll is $94,524.23 (ECF #4, p.4, ¶17), which apparently excludes independent contractors, with the aggregate obligation including such contractors being $103,324.23.

16. The motion states that there are 51 employees paid hourly out of a total of 55. The motion should identify the four employees who apparently on salary, including their identities and pay amounts.

17. The Acting U.S. Trustee has no underlying objection to the payment of payroll to current employees, provided the debtor has the cash, has met the requirements of its cash collateral motion, and has met any requirements of any new borrowing under §364, including any issues related to liens and priming.

## Use of Existing Bank Accounts

18. The debtor also seeks authority to continue the use of its pre-petition bank accounts at Bank of America (BofA). See ECF #5. According to the motion, the debtor uses the accounts "to receive deposits from US Med Capital, LLC, pay vendors, hold patient payments, and fulfill

payroll." *Id.* at ¶10.   Thus, it appears that US Med Capital has access to the debtor's funds in those accounts.   See footnote 1, above.

19.   As described above, all relief now sought from the court by the debtor is contingent on obtaining approval of a long-term factoring/receivables-sales between the debtor and US Med.   That relationship and the factoring arrangement have not been shown to meet the requirements needed for approval by the court.   Accordingly, the subsequent approval of the bank account usage is likewise premature and not necessarily in the best interests of the estate. For example, if the factoring is not approved, the bank accounts should be closed in order to establish a clear line of demarcation between what US Med has done in the past, and what the debtor will be able to do in the future if it is able to get post-petition borrowing approved.   It would also relieve US Med of continued access to the account.

20. The U.S. Trustee also submits that any approval of the continued use of bank accounts must be subject to the bank's continued compliance with §345 and the U.S. Trustee reserves the right to raise the issue of non-compliance if the motion is granted.

Conclusion

21.   The motions before the court seek interim relief with notice to parties that is inadequate considering the scope and complexity of the relief sought.   It is not clear that parties, including secured creditors, have had an opportunity to fully review and respond to the motion. It is also not clear that the debtor has met its burden of proof in the prerequisite motion seeking authority to borrow/factor with US Med, with the balance of the motions being unnecessary unless and until that relief is obtained.

22.   The U.S. Trustee reserves the right to raise additional objections if the debtor goes forward with additional information and upon further review of the facts.   The U.S. Trustee also

Document    Page 9 of 12

submits that she may need to do additional discovery on these matters before an evidentiary hearing on the issues.

WHEREFORE, the United States Trustee submits this omnibus objection to the debtor's motion for authority to continue borrowing/factoring with US Med, for the continued use of cash collateral, for the payment of prepetition wages, and for the continued use of bank accounts. The U.S. Trustee submit that the relief sought must be denied on the basis set forth above.

Dated: June 18, 2024

MARY R. JENSEN
Acting United States Trustee
Region 12

By:   e/Michael R. Fadlovich
MICHAEL R. FADLOVICH
Trial Attorney
MN Attorney I.D. No. 158410
U.S. Trustee's Office
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN   55415
(612) 334-1350

## VERIFICATION

      I, Michael R. Fadlovich, an attorney for the United States Trustee, do hereby certify that the foregoing is true and correct to the best of my knowledge, information and belief.

June 18, 2024                                                        _____s/Michael R. Fadlovich_____
                                                                                Michael R. Fadlovich

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Subchapter V |
| | CHAPTER 11 |
| TWIN CITIES HEALTH SERVICES, INC. | |
| Debtor. | Case No.   24-41577 |

# O R D E R

The above-entitled cases came on before the court on the debtor's expedited motion seeking authority to continue with its factoring agreement, and continued sale of post-petition receivables.   ECF #6.    Appearances were as noted in the record.

Based on the motion, the objections by the Acting U.S. Trustee, and the findings of the court on the record, it is hereby ORDERED

That the debtor's motion is denied.

_____
Kesha L. Tanabe
United States Bankruptcy Judge

# CERTIFICATE OF SERVICE

In Re:                                                                                                               Subchapter V
                                                                                                                                  CHAPTER 11

TWIN CITIES HEALTH SERVICES, INC.

                                     Debtor.                                          Case No.    24-41577

The undersigned hereby certifies under penalty of perjury that he is an employee in the Office of the United States Trustee for the District of Minnesota and is a person of such age and discretion as to be competent to serve papers. That on June 18, 2024, he caused to be served a copy of the attached: United States Trustee's Omnibus Objection to the debtor's motions for 1) approval of continued use of accounts receivable agreement; 2) the payment of prepetition wages, and 3) the continued use of existing bank accounts, as follows:

All parties were served through the court's CM/ECF system on this date.

                                                             **By:**     **e/Michael R. Fadlovich**
                                                                                              Michael R. Fadlovich
                                                                                              Trial Attorney
                                                                                              MN Atty I.D. No. 158410
                                                                                               U.S. Trustee's Office
                                                                                               300 South Fourth St., #1015
                                                                                               Minneapolis, MN    55415
                                                                                               (612) 334-1350